# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-881** |
| **CHARTER HOME HEALTH, L.L.C.,**<br>**WANDELL RAY ROGERS, AND**<br>**JO ALLYSON WILLIAMS** | |

---

## COMPLAINT

---

The United States of America brings this Complaint for breach of contract against Charter Home Health, L.L.C., Wandell Ray Rogers, and Jo Allyson Williams (collectively, "Defendants"). The Government alleges that Defendants have materially failed to comply with their obligations under the June 26, 2017, Settlement Agreement (the "Settlement Agreement") between the United States and Defendants, which resolved the civil action captioned *United States v. Charter Home Health, L.L.C., et al.*, No. 14-37-BAJ-EWD, in the United States District Court for the Middle District of Louisiana. The United States is therefore entitled to its damages resulting from Defendants' breach and all other remedies available in law and equity. In support of this Complaint, the United States represents:

### PARTIES

1.      The United States brings this lawsuit on its own behalf and on behalf of the United States Department of Health and Human Services ("HHS"), HHS's component agency, the Centers for Medicare and Medicaid Services ("CMS"), and the Social Security Administration ("SSA").

2.      On information and belief, Charter Home Health, L.L.C., is a registered Louisiana limited liability company with a principal place of business at 2798 O'Neal Lane, Building C,

Baton Rouge, Louisiana 70816-3408.  Its known members are Jo Allyson Williams and Wandell Ray Rogers, both of whom, on information and belief, are citizens of the State of Louisiana.

3.      On information and belief, Wandell Ray Rogers is a citizen of the State of Louisiana and currently resides at 12045 Home Port Dr., Maurepas, Louisiana 70449-3043.

4.      On information and belief, Jo Allyson Williams is a citizen of the State of Louisiana and currently resides at 305 Marilyn Dr., Sulphur, Louisiana 70663-4025.

## JURISDICTION AND VENUE

5.      The Court has subject-matter jurisdiction over all claims in this matter under 28 U.S.C. §§ 1331, 1345.

6.      The Court may exercise personal jurisdiction over Defendants because they are residents of the State of Louisiana and are therefore subject to the general jurisdiction of Louisiana courts.  *See* Fed. R. Civ. P. 4(k)(1)(A); *cf.* La. Code Civ. Proc. art. 6(A).

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the United States' claims occurred in this district. Venue is also proper in this district pursuant to the forum selection clause in the Settlement Agreement, which specifies that "[t]he exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Louisiana." **Exhibit A**, Settlement Agreement ¶ 21.

## FACTUAL ALLEGATIONS

8.      On January 1, 2014, the United States filed a civil complaint against Defendants in the matter captioned *United States v. Charter Home Health, L.L.C., et al.*, No. 14-37-BAJ-EWD, in the United States District Court for the Middle District of Louisiana.  The Government alleged that Defendants were liable for violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and federal common law based on the submission of false and fraudulent claims for payment to the

2

Medicare program resulting from violations of the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, and to the Social Security Administration for disability benefits for which the recipient did not qualify.

9.      On January 17, 2017, the United States and Defendants filed a Notice of Settlement in that lawsuit and represented that the parties had "reached an agreement in principle to settle all claims in the case." *See* Notice of Settlement, *United States v. Charter Home Health, L.L.C., et al.*, No. 14-37-BAJ-EWD (M.D. La. Jan. 17, 2017), ECF No. 31.

10.     The parties then filed, pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, a Joint Stipulation of Dismissal on July 24, 2017, which dismissed "with prejudice as to the United States . . . those elements of the Civil Action that are coextensive with the Covered Conduct identified in the Settlement Agreement" between the parties, "but without prejudice as to the United States as to any conduct that falls outside the scope of the Covered Conduct." Joint Stipulation of Dismissal, *United States v. Charter Home Health, L.L.C., et al.*, No. 14-37-BAJ-EWD (M.D. La. July 24, 2017), ECF No. 33.

11.     On August 1, 2017, the Court issued an order dismissing the pending action between the United States and Defendants. *See* Order, *United States v. Charter Home Health, L.L.C., et al.*, No. 14-37-BAJ-EWD (M.D. La. Aug. 1, 2017), ECF No. 34. However, the Court's order did not specifically retain jurisdiction to enforce the terms of the parties' Settlement Agreement or incorporate the terms of that agreement. *Cf. Kokkomen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381-82 (1994).

12.     Under the Settlement Agreement, Defendants agreed to pay $1.7 million to the United States in exchange for a release of certain monetary and administrative rights and claims of the Government. The Settlement Agreement includes a payment schedule, which contemplates

3

an up-front payment of $50,000.00 from Defendants followed by five years of monthly payments, escalating from $20,000.00 to $29,792.00 per month, plus accrued interest, with a final monthly installment of $29,776.00, plus accrued interest.  That Settlement Agreement is attached to this Complaint as **Exhibit A**, and the United States incorporates herein the terms of that agreement.

13.    As of December 12, 2019, Defendants have made only the following payments to the United States:

| Payment Date | Payer | Payment Amount |
|---|---|---|
| 6/28/2017 | Charter Home Health, L.L.C. | $25,000.00 |
| 6/28/2017 | Charter Home Health, L.L.C. | $25,000.00 |
| 7/13/2017 | Charter Home Health, L.L.C. | $20,000.00 |
| 8/15/2017 | Charter Home Health, L.L.C. | $20,000.00 |
| 10/12/2017 | Charter Home Health, L.L.C. | $20,000.00 |
| 11/30/2017 | Charter Home Health, L.L.C. | $20,000.00 |
| 12/06/2017 | Charter Home Health, L.L.C. | $20,000.00 |
| 1/12/2018 | Charter Home Health, L.L.C. | $20,000.00 |
| 3/26/2018 | Charter Home Health, L.L.C. | $20,000.00 |
| 6/13/2018 | Charter Home Health, L.L.C. | $20,000.00 |
| 3/8/2019 | Charter Home Health, L.L.C. | $65,000.00 |

14.    The United States has therefore received a total of $275,000.00 in settlement payments from Defendants.  This amount is less than the $836,048.00 in scheduled principal payments, plus interest, accrued to-date.

15.    In violation of its obligations under the Settlement Agreement, Defendants have failed to make required monthly payments for the following months:  September 2017; February 2018; April-May 2018; July 2018-February 2019; and April 2019-present.

16.    On March 27, 2019, the United States sent, by certified mail, return-receipt requested, a notice to counsel for Defendants, which stated that Defendants were delinquent on their payment obligations to the United States under the Settlement Agreement and that Defendants had failed to offer any proposal to cure the default.  *See* **Exhibit B**, Notice, Mar. 27, 2019.  The United States also gave Defendants until Friday, April 26, 2019, "to make all past-due payments

owed to the United States, including interest, and to resume full payments under the Settlement Agreement." *Id.* The Government's notice also specified that the United States was prepared to assert its rights under the default provisions of the Settlement Agreement, including the right to exclude Defendants from participating in Government health care programs. *Id.*

17.    Defendants have provided no response to the United States' March 27, 2019, notice.

18.    Defendants have made no payments under the Settlement Agreement since March 8, 2019, and they currently owe $1.425 million in principal, plus accrued interest, to the United States under that agreement.

## CLAIM FOR RELIEF

### Count 1 – Breach of Contract

19.    The United States adopts by reference the allegations in Paragraphs 8-18.

20.    The Settlement Agreement specifies that it "is governed by the laws of the United States." **Exhibit A ¶ 21.**

21.    "The elements of a breach of contract claim under federal common law are: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *Express Damage Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, No. 1:19-cv-24127-JLK, 2019 WL 6699702, at *2 (S.D. Fla. Dec. 9, 2019) (citation and internal quotation marks omitted).

22.    On June 26, 2017, the United States and Defendants confected a valid Settlement Agreement, which granted Defendants a release of certain civil and administrative monetary claims of the United States and a waiver of HHS, Office of Inspector General's ("HHS-OIG's"), permissive exclusion authority under 42 U.S.C. §§ 1320a-7a, 1320a-7(b)(7), in exchange for $1.7 million in consideration and the execution of a Corporate Integrity Agreement between HHS-OIG and Charter Home Health, L.L.C. *See* **Exhibit A ¶¶ 1-3.**

23.    As part of its obligations under the Settlement Agreement, Defendants agreed to make payments to the United States in accordance with the payment schedule specified in Paragraph 1 of the Settlement Agreement.  *See* **Exhibit A** ¶ 1.

24.    Defendants breached that obligation when they failed to make required payments for September 2017, February 2018, April-May 2018, July 2018-February 2019, and April 2019-present.  Further, Defendants failed to timely cure their default after receiving a March 27, 2019, notice of the default from the United States.  *See* **Exhibit B**.

25.    As a result of Defendants' failure to make required payments under the Settlement Agreement, the United States has the right to declare "the remaining unpaid balance of the Settlement Amount . . . immediately due and payable" with interest accruing "at the rate of 4% per annum compounded daily from the date of Default on the remaining unpaid total (principal and interest balance)."  *See* **Exhibit A** ¶ 10.b.

26.    Defendants have made no payments toward either the debt principal or contractual interest under the Settlement Agreement since March 2019.

27.    As a result of Defendants' default under the Settlement Agreement, Defendants are also required to "execute . . . a Consent Judgment in the amount of the unpaid balance" owed in principal and interest to the United States, which they have failed to do.  *See* **Exhibit A** ¶ 10.b.

28.    The United States has therefore incurred monetary damages as a result of Defendants' failure to meet their obligations under the Settlement Agreement, for which Defendants are now jointly and severally liable to the United States.

**DEMAND FOR RELIEF**

29.     The United States requests that judgment be entered in its favor and against

Defendants for:

a.      The unpaid balance of $1.425 million in principal, plus accrued interest, owed to

the United States under the Settlement Agreement;

b.      All reasonable costs of bringing this action, including attorneys' fees and expenses;

c.      Contractual interest at the rate of 4% per annum compounded daily from the date

of Defendants' default on the unpaid balance of $1.425 million in principal, plus

accrued interest, owed to the United States under the Settlement Agreement;

d.      In the alternative, specific performance of the Settlement Agreement, including an

order requiring Defendants to execute a consent judgment in favor of the United

States for the unpaid balance of $1.425 million in principal, plus accrued interest,

owed to the United States under the Settlement Agreement; and

e.      Such other legal and equitable relief as the Court deems just and appropriate.


Baton Rouge, Louisiana, this 20th day of December, 2019.

UNITED STATES OF AMERICA, by

BRANDON J. FREMIN
UNITED STATES ATTORNEY


/s/ Chase E. Zachary
Chase E. Zachary, LBN 37366
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana  70801
Telephone: (225) 389-0443
Fax: (225) 389-0685
E-mail: chase.zachary@usdoj.gov

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively, the "United States"), and Charter Home Health, L.L.C. (Charter), Wandell Ray Rogers, also known as Ray Rogers, and Jo Allyson Williams, also known as Jody Williams (collectively, the "Charter Defendants") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

### RECITALS

A.      Charter is a provider of home health care services to Medicare beneficiaries.

B.      On January 15, 2014, the United States filed an action in the United States District Court of Middle District of Louisiana captioned *United States v. Charter Home Health, L.L.C., Wandell Ray Rogers, also known as Ray Rogers, and Jo Allyson Williams, also known as Jody Williams*, Civil Action No. 14-37, Section BAJ-EWD, (the "Civil Action"). The Civil Action was dismissed without prejudice on January 18, 2017 pursuant to the *Joint Notice of Settlement* filed by the Parties.

C.      The United States contends that the Charter Defendants submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare").

D.      The United States contends that it has certain civil claims against the Charter Defendants for engaging in the following conduct (hereinafter referred to as the "Covered Conduct") during the period from January 2003 through December 2012:

Exhibit A

a.      knowingly making, and causing others to make, illegal payments and kickbacks to marketers to induce the referral of patients to Charter for home health care services;

b.      knowingly creating, and causing others to create, false claims and records in order to hide their scheme (including but not limited to false cost reports, false UB-92s and electronic equivalents);

c.      knowingly submitting, and causing others to submit, to the Medicare program false or fraudulent claims for reimbursement for services Charter rendered to Medicare beneficiaries who were referred to Charter by marketers receiving payments from Charter;

d.      knowingly submitting, and causing others to submit, false or fraudulent claims and false statements in support of false claims contained in cost reports to Medicare to obtain reimbursement for the illegal remuneration Charter paid to marketers to obtain patient referrals to Charter; and

e.      knowingly causing Veronica Green (Green) to submit claims for payment to the Social Security Administration (SSA), by aiding and abetting Green's concealment from the SSA of the fact that Green was earning a substantial amount of income as an independent contract marketer for Charter while she was also receiving disability benefits.

E.      This Settlement Agreement is neither an admission of liability by the Charter Defendants nor a concession by the United States that its claims are not well founded.

2

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.    The Charter Defendants shall pay to the United States ONE MILLION SEVEN HUNDRED THOUSAND AND N0/100 ($1,700,000) DOLLARS (the "Settlement Amount"). This sum shall constitute a debt immediately due and owing to the United States on the Effective Date of the Agreement and when fully paid, shall be in full financial settlement and satisfaction of the claims against the Charter Defendants for the Covered Conduct. This debt is to be satisfied as follows:

a.    All payments herein shall be paid by electronic funds transfer pursuant to written instructions pursuant to written instructions provided by the United States Attorney's Office for the Middle District of Louisiana.

b.    FIFTY THOUSAND AND N0/100 ($50,000) DOLLARS shall be paid no later than the effective date of this Agreement.

c.    The remaining balance of ONE MILLION SIX HUNDRED FIFTY THOUSAND AND NO/100 ($1,650,000) plus interest from the date of the settlement at a rate of 2.375% shall be paid in accordance with the payment schedule in Appendix A as follows:

i.    Consecutive monthly installments of TWENTY THOUSAND AND 00/100 ($20,000) DOLLARS, plus interest from the date of the settlement at a rate of 2.375%, shall be paid beginning on or before July 1, 2017, through on or before May 1, 2018.

ii.    Consecutive monthly installments of TWENTY-NINE THOUSAND SEVEN HUNDRED NINETY-TWO AND 00/100 ($29,792) DOLLARS, plus interest from the

3

date of the settlement at a rate of 2.375%, shall be paid beginning on or before June 1, 2018, through on or before April 1, 2022.

      iii.     A final payment of TWENTY-NINE THOUSAND SEVEN HUNDRED SEVENTY-SIX AND 00/100 ($29,776) DOLLARS, plus interest from the date of the settlement at a rate of 2.375%, shall be paid beginning on or before May 1, 2022.

      d.     Nothing in this Agreement shall preclude the Charter Defendants from prepaying any payment due under this Settlement Agreement.

      e.     Upon the failure by the Charter Defendants to fully pay any amounts provided herein within 15 days of when such payment is due and payable, the Charter Defendants shall be deemed in default of this Agreement and as such, shall be subject to the provisions of Paragraph 10, below.

      2.     Subject to the exceptions in Paragraph 4 (concerning excluded claims) below, and conditioned upon the full and timely payment by or on behalf of the Charter Defendants of the Settlement Amount, and subject to Paragraph 17, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement) the United States releases the Charter Defendants from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. §1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812 and the common law theories of payment by mistake, unjust enrichment, and fraud.

      3.     In consideration of the obligations of the Charter Defendants in this Agreement and the Corporate Integrity Agreement (CIA), entered into between OIG-HHS and Charter Home Health, L.L.C., and conditioned upon the Charter Defendants' full payment of the

Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or

maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other

Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Charter Home

Health, L.L.C. under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. §

1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the

Covered Conduct, except as reserved in this Paragraph and in Paragraph 7 (concerning excluded

claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory

obligations to exclude Charter Home Health, L.L.C. from Medicare, Medicaid, and other Federal

health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the

Covered Conduct.  Nothing in this Paragraph precludes the OIG-HHS from taking action against

entities or persons, or for conduct and practices, for which claims have been reserved in

Paragraph 4, below.

      4.     Notwithstanding the release given in Paragraphs 2 and 3 of this Agreement, or

any other term of this Agreement, the following claims of the United States are specifically

reserved and are not released:

          a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

          b.     Any criminal liability;

          c.     Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

          d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

          e.     Any liability based upon obligations created by this Agreement;

          f.     Except as explicitly stated in this Agreement, any liability of individuals;

5

g.  Any liability for express or implied warranty claims or other claims for

defective or deficient products or services, including quality of goods and

services;

h.  Any liability for failure to deliver goods or services due; and

i.  Any liability for personal injury or property damage or for other

consequential damages arising from the Covered Conduct;

5.  The Charter Defendants have provided sworn financial disclosure statements

("Financial Statements") to the United States and the United States has relied on the accuracy

and completeness of those Financial Statements in reaching this Agreement. The Charter

Defendants warrant that the Financial Statements are complete, accurate, and current. If the

United States learns of asset(s) in which the Charter Defendants had an interest at the time of this

Agreement that were not disclosed in the Financial Statements, or if the United States learns of

any misrepresentation by the Charter Defendants on, or in connection with, the Financial

Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set

forth in the Financial Statements by TEN THOUSAND AND NO/100 ($10,000) or more, the

United States may at its option:  (a) rescind this Agreement and reinstate its suit based on the

Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one

hundred percent (100%) of the value of the net worth of the Charter Defendants previously

undisclosed. The Charter Defendants agree not to contest any collection action undertaken by the

United States pursuant to this provision, and immediately to pay the United States all reasonable

costs incurred in such an action, including attorney's fees and expenses.

6.  In the event that the United States, pursuant to Paragraph 5 (concerning disclosure

of assets), above, opts to rescind this Agreement, the Charter Defendants agree not to plead,

argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 60 calendar days of written notification to the Charter Defendants that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of this Agreement.

7.      The Charter Defendants waive and shall not assert any defenses the Charter Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

8.      The Charter Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that the Charter Defendants have asserted, could have asserted, or may assert in the future against the United States, and its agencies, officers, agents, employees, and servants related to the Covered Conduct and the United States' investigation and prosecution thereof.

9.      The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered

Conduct; and the Charter Defendants agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

10.    Default. In the event that the Charter Defendants fail to pay any amount due under this Agreement within 15 days of the date upon which such payment is due, the Charter Defendants shall be in Default of their payment obligations ("Default"). The United States will provide written notice of the Default, and the Charter Defendants shall have an opportunity to cure such Default within five business days from the date of receipt of the notice. Notice of Default will be delivered to the Charter Defendants in care of Mr. Christopher Johnston, Gachassin Law Firm, 200 Corporate Blvd., Lafayette, LA 70508, or to such other representative as the Charter Defendants shall designate in advance in writing. Upon the Charter Defendants' Default and failure to cure such Default within the five business days of receipt of notice, the United States shall have the following options:

a.    rescind this Agreement and file suit based on the Covered Conduct. In such event, the Charter Defendants agree not to plead, argue, or otherwise raise any defenses based on statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims which (i) are filed by the United States within sixty (60) calendar days of the receipt of written notification to the Charter Defendants that this Agreement has been rescinded and (ii) which relate to the Covered Conduct, except to the extent that these defenses were available on the Effective Date of this Settlement Agreement; or

b.    the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest shall accrue at the rate of 4% per annum compounded daily from the date of Default on the remaining unpaid total (principal and interest balance). The

8

Charter Defendants shall execute to a Consent Judgment in the amount of the unpaid balance, and the United States, at its sole option, may: (i) offset the remaining unpaid balance from any amounts due and owing to the Charter Defendants by any department, agency, or agent of the United States at the time of the Default; or (ii) exercise any other rights granted by law or in equity, including the option of referring such matters for private collection. The Charter Defendants agree not to contest any offset imposed and not to contest any collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court. The Charter Defendants shall pay the United States all reasonable costs of collection and enforcement under this Paragraph, including attorney's fees and expenses.

    c.  Additionally, in the event of a Default as defined in Paragraphs 1 and 10 of this Agreement, specifically, that the Charter Defendants fail to cure within the timeframe and under the conditions set out in that Paragraph, OIG-HHS may exclude the Charter Defendants from participating in all Federal health care programs until the Charter Defendants pay the Settlement Amount and all reasonable costs as set forth above. OIG-HHS will provide written notice of any such exclusion to the Charter Defendants. The Charter Defendants waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agree not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion the Charter Defendants wish to apply for reinstatement, the Charter Defendants must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. The Charter Defendants will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

    11.  In the event this Agreement is rescinded and suit is filed against the Charter

9

Defendants under Paragraph 10 due to their default, the Charter Defendants shall be entitled to a credit against any judgment rendered against them up to the amount paid by them under this Agreement.

      12.    The Charter Defendants agree to the following:

      a.    <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of the Charter Defendants, their present or former officers, directors, employees, shareholders, and agents in connection with:

      (1)    the matters covered by this Agreement

      (2)    the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

      (3)    the Charter Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

      (4)    the negotiation and performance of this Agreement;

      (5)    the payment the Charter Defendants make to the United States pursuant to this Agreement; and

      (6)    the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as

described in Section III of the CIA; and (ii) prepare and submit reports to

the OIG-HHS,

are unallowable costs for government contracting purposes and under the Medicare Program,

Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program

(FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in paragraph 12.a.(6)

that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that

are not allowable based on any other authority applicable to the Charter Defendants.

      b.     <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be

separately determined and accounted for in nonreimbursable cost centers by the Charter

Defendants, and the Charter Defendants shall not charge such Unallowable Costs directly or

indirectly to any contracts with the United States or any State Medicaid program, or seek

payment for such Unallowable Costs through any cost report, cost statement, information

statement, or payment request submitted by the Charter Defendants or any of its subsidiaries or

affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

      c.     <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: the

Charter Defendants further agree that within 90 days of the Effective Date of this Agreement it

shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or

contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this

Paragraph) included in payments previously sought from the United States, or any State

Medicaid program, including, but not limited to, payments sought in any cost reports, cost

statements, information reports, or payment requests already submitted by the Charter

Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost

reports, cost statements, information reports, or payment requests, even if already settled, be

11

adjusted to account for the effect of the inclusion of the unallowable costs. The Charter

Defendants agree that the United States, at a minimum, shall be entitled to recoup from the

Charter Defendants any overpayment plus applicable interest and penalties as a result of the

inclusion of such Unallowable Costs on previously-submitted cost reports, information reports,

cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United

States pursuant to the direction of the Department of Justice and/or the affected agencies. The

United States reserves its rights to disagree with any calculations submitted by the Charter

Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable

Costs (as defined in this Paragraph) on the Charter Defendants or any of their subsidiaries or

affiliates' cost reports, cost statements, or information reports.

d.        Nothing in this Agreement shall constitute a waiver of the rights of the

United States to audit, examine, or re-examine the Charter Defendants' books and records to

determine that no Unallowable Costs have been claimed in accordance with the provisions of this

Paragraph.

13.     The Charter Defendants agree to cooperate fully and truthfully with the United

States' investigation of individuals and entities not released in this Agreement. Upon reasonable

notice, the Charter Defendants shall encourage, and agree not to impair, the cooperation of their

directors, officers, and employees, and shall use its best efforts to make available, and encourage,

the cooperation of former directors, officers, and employees for interviews and testimony,

consistent with the rights and privileges of such individuals. The Charter Defendants further

agree to furnish to the United States, upon request, complete and unredacted copies of all non-

privileged documents, reports, memoranda of interviews, and records in its possession, custody,

or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

14.     This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 15, below.

15.     The Charter Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16.     The Charter Defendants warrant that they have reviewed their financial situation and that they currently are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to the Charter Defendants within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do in fact represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which the Charter Defendants were or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

17.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, the Charter Defendants commence, or a third party commences, any case,

proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or

relief of debtors (a) seeking to have any order for relief of the Charter Defendants' debts, or

seeking to adjudicate the Charter Defendants as bankrupt or insolvent; or (b) seeking

appointment of a receiver, trustee, custodian, or other similar official for the Charter Defendants

or for all or any substantial part of the Charter Defendants' assets, the Charter Defendants agree

as follows:

        a.      The Charter Defendants' obligations under this Agreement may not be

avoided pursuant to 11 U.S.C. § 547, and the Charter Defendants shall not argue or otherwise

take the position in any such case, proceeding, or action that: (i) the Charter Defendants'

obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) the Charter

Defendants were insolvent at the time this Agreement was entered into, or became insolvent as a

result of the payment made to the United States; or (iii) the mutual promises, covenants, and

obligations set forth in this Agreement do not constitute a contemporaneous exchange for new

value given to the Charter Defendants.

        b.      If the Charter Defendants' obligations under this Agreement are avoided

for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers

under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this

Agreement and bring any civil and/or administrative claim, action, or proceeding against the

Charter Defendants for the claims that would otherwise be covered by the releases provided in

Paragraphs 2 and 3, above. The Charter Defendants agree that (i) any such claims, actions, or

proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11

U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this

Paragraph, and the Charter Defendants shall not argue or otherwise contend that the United

States' claims, actions, or proceedings are subject to an automatic stay; (ii) the Charter Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 60 calendar days of written notification to the Charter Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on Effective Date of this Agreement; and (iii) the United States has a valid claim against the Charter Defendants in the amount of EIGHT MILLION FOUR HUNDRED THIRTY THOUSSAND TWO HUNDRED FIFTY FOUR AND 80/100 ($8,430,254.80) DOLLARS which includes treble damages and penalties, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

      c. The Charter Defendants acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

    18.    Simultaneously with the execution of this Agreement, the United States and the Defendants shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal pursuant to Rule 41(a)(1)(A)(ii), dismissing the Civil Action with prejudice as to the United States as to those elements of the Civil Action that are coextensive with the Covered Conduct identified in the Settlement Agreement, but without prejudice as to the United States as to any conduct that falls outside the scope of the Covered Conduct.

    19.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

20. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

21. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Louisiana. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

23. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25. This Agreement is binding on the Charter Defendants' successors, transferees, heirs, and assigns.

26. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

27. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

16

THE UNITED STATES OF AMERICA

DATED: **6/26/17**          BY: _Catherine Maraist_
                               CATHERINE M. MARAIST, LBN 25781
                               Assistant U.S. Attorney
                               Middle District of Louisiana
                               U.S. Department of Justice

<u>THE UNITED STATES OF AMERICA</u>

DATED: _6/03/17_         BY: _____

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Department of Health and Human Services

THE CHARTER DEFENDANTS

DATED: 6/8/2017    BY: _____

CHRISTOPHER C. JOHNSTON (#14403)
Post Office Box 80369
Lafayette, LA 70598-0369
Attorney for the Charter Defendants

DATED: 06/07/2017    BY: _____

CHARTER HOME HEALTH, L.L.C.
By its authorized representative
Jo Allyson Williams

DATED: 06/07/2017    BY: _____

JO ALLYSON WILLIAMS (Individually)

DATED: 06/07/2017    BY: _____

WANDELL RAY ROGERS (Individually)

19

**U.S. Department of Justice**

*Brandon J. Fremin*
*United States Attorney*
*Middle District of Louisiana*

---

*Russell B. Long Federal Building*          *Telephone: (225) 389-0443*
*777 Florida Street, Suite 208*                    *Fax: (225) 389-0685*
*Baton Rouge, Louisiana 70801-1717*

March 27, 2019

## VIA EMAIL AND CERTIFIED MAIL RETURN RECEIPT REQUESTED

johnstonhealthlaw@outlook.com          (7014 2120 0002 6447 0143)

Christopher C. Johnston
7830 Sage Hill Rd.
St. Francisville, Louisiana 70775

      Re:    <u>Charter Home Health</u>
              USAO File No.:  2011V00225

Chris:

      As you are aware, your clients—Charter Home Health, L.L.C.; Wandell Ray Rogers; and Jo Allyson Williams (collectively, "Charter Home Health")—are delinquent on their payment obligations to the Federal Government under the June 26, 2017, Settlement Agreement between Charter Home Health and the United States.

      Charter Home Health has agreed to pay the United States $1.7 million, plus interest, in accordance with the payment schedule set forth in the Settlement Agreement.  To-date, only $275,000 has been paid, and Charter Home Health has missed over $300,000 in required payments.  Despite repeated notices to you and to Charter Home Health regarding the delinquency, your clients have offered no feasible proposal to cure the default.

      As I have previously made clear to you, the United States is not waiving any of its rights under the Settlement Agreement and will not renegotiate that agreement.  This letter provides notice that Charter Home Health has until **Friday, April 26, 2019**, at **5:00 P.M. CDT** to make all past-due payments owed to the United States, including interest, and to resume full payments under the Settlement Agreement.

      If your clients fail to comply with this demand, the United States is prepared to avail itself of the default provisions in Section 10 of the Settlement Agreement, including rescinding that agreement and filing suit based on the Covered Conduct (as defined in the agreement) or requiring Charter Home Health to execute a consent judgment for the unpaid balance and utilizing all lawful means of collecting on that judgment.

      Note also that, under Section 10(c) of the Settlement Agreement, OIG-HHS has reserved the right to exclude Charter Home Health from participating in all Federal health care programs in the event of a default.  Should default proceedings be necessary, I will refer this matter to OIG-HHS to consider

<span style="color:red">Exhibit B</span>

Christopher C. Johnston
March 27, 2019
Page 2

these and any other administrative remedies that the agency may have.

      Please feel free to contact me by phone or by email (chase.zachary@usdoj.gov) if you have any questions or if you would like to discuss this matter further.

                Sincerely,

                BRANDON J. FREMIN
                UNITED STATES ATTORNEY

                Chase E. Zachary
                Assistant United States Attorney

CEZ/bjp

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**DEFENDANTS**

Charter Home Health, L.L.C.; Rogers, Wandell Ray; and Williams, Jo Allyson

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   East Baton Rouge
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Chase E. Zachary, Assistant U.S. Attorney
777 Florida St., Ste. 208, Baton Rouge, LA 70801
225-389-0443

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
　　　 Plaintiff

☐ 3   Federal Question
　　　 *(U.S. Government Not a Party)*

☐ 2   U.S. Government
　　　 Defendant

☐ 4   Diversity
　　　 *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | **PERSONAL INJURY** | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) |
| | | | | ☐ 864 SSID Title XVI |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 896 Arbitration |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

Additional Other Statutes: ☐ 485 Telephone Consumer Protection Act, ☐ 490 Cable/Sat TV, ☐ 850 Securities/Commodities/Exchange, ☐ 890 Other Statutory Actions, ☐ 891 Agricultural Acts, ☐ 893 Environmental Matters, ☐ 895 Freedom of Information Act

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1345

Brief description of cause:
Breach of settlement agreement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
1,425,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   12/20/2019

SIGNATURE OF ATTORNEY OF RECORD   /s/ Chase E. Zachary

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| United States of America | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No.  19-881 |
| | ) |
| Charter Home Health, L.L.C., Wandell Ray Rogers, | ) |
| and Jo Allyson Williams | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Charter Home Health, L.L.C.
2798 O'Neal Lane, Building C
Baton Rouge, LA 70816-3408

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Chase E. Zachary
Assistant United States Attorney
777 Florida St., Ste. 208
Baton Rouge, LA 70801

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  19-881

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No.  19-881 |
| | ) | |
| Charter Home Health, L.L.C., Wandell Ray Rogers, | ) | |
| and Jo Allyson Williams | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Wandell Ray Rogers
12045 Home Port Dr.
Maurepas, LA 70449-3043

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Chase E. Zachary
Assistant United States Attorney
777 Florida St., Ste. 208
Baton Rouge, LA 70801

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  19-881

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| United States of America<br><br>_Plaintiff(s)_<br><br>v.<br><br>Charter Home Health, L.L.C., Wandell Ray Rogers,<br>and Jo Allyson Williams<br><br>_Defendant(s)_ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.  19-881

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  Jo Allyson Williams
305 Marilyn Dr.
Sulphur, LA 70663-4025

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Chase E. Zachary
Assistant United States Attorney
777 Florida St., Ste. 208
Baton Rouge, LA 70801

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____                    _____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   19-881

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____        _____
                               *Server's signature*

                               _____
                               *Printed name and title*

                               _____
                               *Server's address*

Additional information regarding attempted service, etc: